May it please the Court, Joseph Klappich appearing for Appellant Maureen Uche-Uwakwe. This is the second time my client has appealed from a summary judgment against her. What happened this time was the parties filed their summary judgment papers and their supporting evidence. There were no evidentiary objections filed by any of the parties. The district court then took the ruling under submission and on its own motion excluded nearly all the evidence submitted by both parties and concluded, based on the little bit of evidence that was left, that my client, the plaintiff, had not presented a prima facie case. But as a technical matter, was the judge wrong to say that depositions that are submitted should have the certification from the court reporter and that declarations that are submitted should be under a penalty of perjury? Was she wrong in that? I would make two arguments in response to that because I think there's two errors that happened here. The first is that the district court applied the wrong legal standard in excluding the evidence on authenticity grounds under this court's recent decision in the Las Vegas Sands case. And what happened in Las Vegas Sands was, just like this case, the parties submitted a declaration with a document that was produced in discovery and the district court excluded it on the ground that, hey, the attorney declaration that went along with it, you don't have personal knowledge. And what the court, this court, ruled was the district court can't just stop at whether or not there's personal knowledge, but then has to go on and look at these documents and see whether they can be authenticated through other means. And the other means are, one of the other means available is looking and reviewing the contents of the documents. And the documents here, I mean, there was no dispute that these were transcripts from proceedings. They had cover pages that showed they took place on certain dates and they had, you know, certified court reporters there and so forth. But the problem is, at the end, the certified court reporter didn't say that they, because when you take a deposition, you're not done until after the parties read the deposition, they make the changes they're going to make, and then the court reporter says, okay, here's the final product after it's gone through this process. So it's not just, you know, a token thing that's done. The court reporter has to certify that this is, in fact, the result of the process. And so why wouldn't the district court be within her discretion to say that process was not documented and so, therefore, these depositions are not properly admitted? Well, I think that thing goes to the second, well, the first issue, I want to make sure I'm clear on it. Las Vegas Sands says you have to apply the right legal standard, and if you don't, that is an abuse of discretion. The district court judge here clearly didn't because she didn't go on to perform the second part of the analysis, which was are there any other methods of authentication here. She didn't perform the analysis that Your Honor just performed, and I would submit that that in itself is an abuse of discretion. Now, turning to the second issue is can a district court on her own motion just exclude the evidence like this without giving any of the parties a chance to cure it? And I would submit that the deficiency here is clearly one that's of a very technical nature, that if the parties had been given an opportunity here, that they could have just, oh, I'm sorry, we forgot that page when we were making our copies, right? We have copies of the certifications. We know they have copies of the certifications because some of them were submitted with the certifications, and we know that there was no objection filed by anybody. Everybody understood these are the transcripts, no objection by any of the parties. The district court on its own says, oh, missed this little technical thing. I'm going to exclude everything, and then you don't have any evidence left. Now, there isn't very much federal authority or, quite frankly, published authority of any way on this particular issue of what's the scope of a district judge's power to correspond to exclude evidence. But there's a issue that has been addressed in one of the leading treatises, McCormick on Evidence. And what McCormick says is that the district court's power to exclude evidence is subject to a couple of important limitations. First, because a district court's power arises out of its truth-seeking function, right, a district court can't exclude evidence on its own motion that would otherwise be relevant and reliable due to some sort of technical evidentiary defect, right? And the second thing that McCormick suggests and actually cites to a case called Electric Park Amusement, which is a New Jersey Supreme Court decision going way back, but it says a district court can't exercise its power to exclude this kind of evidence to a sponte without giving the parties a fair opportunity to correct an easily correctable defect. And that's exactly what you had here. You have situations where they just forgot to put a page in. And if this had happened, and I even cited cases, district court cases where this exact thing had happened, where a party had forgot to do it, the other side had objected. And what they did is, oops, I forgot that page. They put in something to correct that error. And the district court said, hey, it's been corrected. Now let's go on and consider the merits, which is the point. I see statements that were submitted from individuals and there was no, it was not an affidavit form. It was just a statement. What about those? Well, I mean, the defect that the district court identified was that it doesn't have the, it doesn't meet the requirements of 1746, 28 U.S.C. 1746. And, again, I cited authority. There was an ace verdict decision that says this is an argument that's waived if not raised by the parties. And, again, it's an easy, it's a correctable mistake. If somebody puts in an objection and says, you know, you didn't put the, you know, it's under this penalty of perjury that you don't have that line at the bottom of your statement, okay, they could have gone and gotten replacement declarations. How far does the district court have to go in terms of, you know, coaxing the parties to follow the rule? There's a fine line, you know, between, you know, the district court enforcing the rules and one, you know, where they're just babying the parties. You know, district court judges have a limit to their patience in terms of, you know, reminding parties that there are rules that must be followed. Well, I think, Your Honor, there's two things to be noted on that. I mean, the first is there was no objections filed here. So this is a situation where the parties were perfectly happy to have the court resolve it. I mean, the rules go away just because the parties are sloppy. Well, that's true. But typically, an evidentiary, typically the rule is you make an objection to an evidentiary point. Otherwise, it's waived. And the court will say, ah, you know, I'll go on. And, frankly, I would note there may have been good reasons, particularly with respect to the transcripts, that no objection was made, right, that the other side looked at these and said, hey, I was at that, I was at that deposition. I was at that proceeding. I know this is the right thing. So, therefore, I'm not going to make an objection. And the question here is the issue is when can a district court come in and assert objections that the other side hasn't asserted and dismiss evidence that otherwise would be highly probative to the issues before them on its own volition without giving the parties any kind of fair opportunity to respond to that. You may not be in a position to answer this question. And if it's awkward or you feel not in a position to answer it, feel free not to answer. What's going on here? I mean, this is the second time we've heard this case. This district judge seems unwilling to allow this case to go forward. I mean, this is, I think, the frustration of my client. I mean, the first time this came up on appeal, there was a late filed opposition and the judge said, sorry, I'm not going to consider it. And this court reversed and said, I mean, it's in, a reply was filed, consider it, right. Then it comes back down on remand. The parties submit all their new papers. The judge looks at it and says, oh, guess what? I'm not going to consider any of the evidence and you lose. And, you know, I mean, from my client's perspective, there's a sense of, hey, what do I have to do to get, you know, to get my dispute heard? You have to practice law under the rules. And, you know, it really, it's, I mean, you have so many cases as a district court judge, it's really hard, you know, to move the calendar along if the parties aren't, you know, complying with the rules. It's just, because then on appeal, you get somebody saying, you know, the district court judge accepted this and it wasn't certified and, you know, it just makes it cleaner if everybody adheres to the rules. Your Honor, I think, I think you are absolutely correct that everyone should adhere to the rules. The question here is what happens when there was a technical, you know, failure to comply with an evidentiary requirement. There were no objections. I mean, typically what you would say in this situation is it's waived, right? And the district court comes in and doesn't just exclude, you know, some little bit of evidence. I mean, the district court here excluded 28 out of the 31 exhibits submitted by the parties and four out of the five declarations submitted by the parties. Sloppy record. It's a sloppy record. And it's hard for a court to wade through sloppy records and make rulings. And I think that's what happened. The record was sloppy and the district court didn't give you the benefit of the doubt because the record was sloppy. Well, I guess the response to that is to, you know, I would go back to the rule of law that's identified in, you know, the McCormick Treatise that talks about what's the role of the district court in this sort of scenario. And the role of the district court is in a truth-seeking function. And I would submit to Your Honors that that function is not served when the judge disregards evidence that has been submitted that for which there has been no objection by any of the parties. When the parties have put evidence before the judge and said, this is the evidence we want you to decide the case on, and the judge comes in and says, well, I'm not going to consider any of it, and you lose, you know, the, you know, the argument I would make is that's an abuse of discretion. And I would then also note that it's, she clearly applied the wrong legal standard under the Las Vegas Sands case. So that's, you know, that's a second independent basis, frankly, a prior basis by which to, you know, to identify the ruling as incorrect. Turning to the merits, I think that the evidence that was submitted, assuming that all of it had been considered, was clearly enough to establish the primary patient evidence of her claim. On the disparate treatment claim, there was no dispute she was a member of a protected class, is an African-American woman. There was no dispute that she hadn't gotten a deposition, no dispute the position was filled by four Asians. The only issue was whether or not she was qualified. And her deposition testimony identified she was a registered pharmacist, which is the same position as two of the other employees who were hired. She had previously worked in a temporary role in one of the positions that she was applying for. She was currently working in the same position of another one that she was applying for as an outpatient pharmacist. She was told after the interview that they believed she was able to perform the job. And she later interviewed for similar positions. So there was a lot of evidence here of qualification that the judge didn't consider because of the evidentiary rulings. Was there a hearing on this case? There was no hearing. The hearing was basically the party submitted. The judge did, as is common in federal district courts these days, said no hearing. And then the next thing they found out was they get the court's ruling in the mail. And, you know, judgment was entered and this appeal ensued. The ‑‑ I mean, I can sort of go on to address the evidence on, you know, on the ‑‑ The only one that I had a question about was the hostile work environment, whether or not it rose to the level that's required. I think the response to that is, I mean, first of all, we have verbal conduct of a racial nature. There's testimony in the record that one of her supervisors, Ms. Almira, was, quote, constantly referring to her as a, quote, queen of Sheba. What do you mean constantly? I thought there was just one. Well, Ms. Almira, her testimony was that she was constantly referred to as the queen of Sheba. That's at the second volume of the excerpt of record, pages 261 to 63. That's what the plaintiff testified to. That was supported by Ms. Ubalez's declaration who said at pages 383 and 385 of the third volume that she had heard Ms. Almira refer to her as the queen in her country and make other comments like that. So there's a sense that this is pervasive. If one robin doesn't make a spring, what makes that a hostile work environment if she was referred to as the queen of Sheba? And what's racial about that? It's a biblical thing. It goes back a long time. But what's invidious racial discrimination about it? I believe a jury could conclude that in this context, referring to her as a queen of Sheba was meant to convey the idea that she was an uppity African-American woman who felt like she was too good to do her job and better than the other people around her. And it had a racial and a stereotypical application to it that was targeted to her because of her race and putting her in sort of that stereotypical spot. You have a part of your complaint is she got a kind of a blizzard of ROCs at one time, and it might have been retaliatory, we don't know, but one of the allegations. Other than what is stated in the complaint, what is an adverse or discriminatory feature of those ROCs? Well, I think what happens here is she consults with the EEO, and almost immediately thereafter, she begins to get these reports of complaints. And the testimony was that they were, quote, excessive, that they were happening, quote, almost every day. And these are coming at the direction of her supervisors. Her supervisors are telling other employees to write her up. They're occurring in places where, you know, the people who are writing her up didn't witness the events or what the writing up is contradicted by the witnesses. And this is the idea here, and ultimately this culminates, by the way, in a letter of reprimand and administrative board of investigation at the hospital. So these were serious, this blizzard of ROCs. And these sorts of reports, when, you know, I mean, you can think that's an adverse action. If I'm going to file a claim, you know, to assert my rights of discrimination, and immediately thereafter I'm then all of a sudden hit with a blizzard of everyone sitting over my shoulder and making reports, saying things that aren't true, in my view, and can't be supported. I mean, that's an adverse employment action. Now, are these ROCs also something that could be considered on the question of hostile work environment? Yes. And that's the argument that I make in the brief, which is that you have these racial, you know, the racial terms. And I only talked about the one, of her being constantly referred to as Queen Yeshiva. And Your Honor correctly noted that Ms. Almira testified that she'd only said it once, but that the rest of the evidence in the record, and it has to be construed on summary judgment in favor of my client, that it was happening constantly and repeatedly. But there's also a statement by another one of her managers, Mr. Chan, who said that he's worked with Nigerians before, and he finds them inflexible and stubborn, and evidence that her coworkers were making fun of her accent. But to go back to your question, Judge Fletcher, yes. The argument would be that we have racial animus being displayed, you know, racially motivated comments, and then we have a whole host of things that are happening to her. And apart from the reports of violating, you know, the VA policies, we have her car being vandalized three times in the workplace parking lot. We have ---- Well, how do you attribute that to the government? I mean, that damage at parking lots can happen from hundreds of different sources. I think that's true, but I think it is a fair inference a jury could draw that if it happens three times and it's in the parking lot of the place of employment, and she's being subjected to other types of behavior, that it's a concerted effort by those there to discourage her from making, you know, making claims. And, in fact, one of the allegations that, you know, the evidence that I found personally quite chilling was there was a fair amount of efforts to get her to not make EEO reports. Mr. Chan said, don't go to the EEO. And then Ms. Almira made a ---- her supervisor Almira made a comment, people who file EEO complaints may get lots of money, but they will ultimately get in a car accident and die. Right? And that's somewhat frightening for an employee when your car has been vandalized three times out in the workplace parking lot. You know, this is starting to rise to a level of, wow, this is really making me not want to come into work. And that's the whole point of the retaliation. You're over time. Let's hear from the other side, but we'll give you a chance to respond. Thank you. Good morning, Your Honors. May it please the Court, I'm Keith Staub on behalf of the Department of Veteran Affairs. I first wanted to address a few of the comments made by counsel with respect to the Las Vegas Sands case in particular. Counsel indicated that the evidence in the Las Vegas Sands case was attached to an affidavit. That's not true. Reading from the Court's opinion in Las Vegas Sands, neither was ---- we're talking about a letter that was excluded, a letter from an attorney. The Court said at page 533, neither letter or return receipt was attached as an exhibit to an affidavit of a person offering his personal knowledge of how the document was prepared as the basis. The crux is that this district court judge abided by this Court's decision in the Orr case and excluded, properly excluded testimony by way of deposition that did not include a court-reported certification. And this Las Vegas Sands case points out that if you attach evidence to a declaration or affidavit, that person has to have sufficient knowledge. What's your response to opposing counsel's position that the Court shouldn't sua sponte do that? I know of no law in this circuit that suggests that, Your Honor. In fact, there are ---- I have cited cases in my brief in the Seventh and Eighth Circuits that said the Court does have sua sponte discretion to exclude evidence on its own accord. A court in the Dugan case, which was a Seventh Circuit case, said basically district court judges are not just umpires. They're essentially gatekeepers. Their job is to ensure that the evidence is properly authenticated and admissible. Yeah, what bothers me about that, I understand the general rule, and I think you're describing it correctly and describing the cases correctly. Particularly with respect to the depositions, this strikes me as hyper-technical. I mean, I assume that there was a reason there was no objection to the depositions, that everybody understood those were the accurate depositions. Isn't that right? That is correct, Your Honor. Yeah, yeah. So, I mean, for the district court to do this and in a sense go out of its way, not being asked by either party to exclude depositions that everybody in his dog knows are fine. If they weren't, you would have said something. It may be slightly more substantive and a little less technical to insist on affidavits. I don't know why everybody calls them declarations. That's state practice, but the word in federal practice is affidavits. But for some reason, nobody ever insists that they be called affidavits. I don't know why she didn't insist on that, too, while she was at it. To have signed under penalty of perjury, I understand it a little more. But this is just sort of hyper-technical stuff designed to get all the evidence out so she can grant summary judgment. What's going on here? Well, Your Honor, all I can do is point to the Orr decision. This court in Orr specifically said you can't just attach a deposition to the affidavit of an attorney. That won't suffice to authenticate the document. It's clear. It's unequivocated. She did not abuse her discretion by relying on the words this Court suggested in the Orr case. And it's never been contradicted in any other Ninth Circuit case. It is hyper-technical. I agree. We had no objection to the deposition testimony. The question is, did the Court have the discretion to abide by this Circuit's decisions on how to authenticate deposition testimony? Well, I think that this is not my own view. I am not contemplative of my colleagues on this point. I think the district judge had the authority, sua sponte, legitimately to insist that the rules be followed. But in the absence of any objection, not to allow any possibility of cure when it's patently obvious that a cure would have been easily forthcoming, that's where I have problems. I understand the Court's concern. Unfortunately, as Judge Rawlinson pointed out, district court judges have very limited time, very busy schedules. Well, she took a lot of time to do what she did. Nonetheless, Your Honor, I think it's not uncommon practice for judges not to have hearings on these motions for summary judgment. I think it's the responsibility of the lawyers involved to ensure that they adequately comply with the rules. And as Judge Rawlinson pointed out, it was sloppy, and I was one of the sloppy parties. It might have been a save of time. I mean, if in the end you're pretty sure it's going to be cured, why insist upon a cure? It's going to cost everybody time. Well, actually, it wouldn't have cost a lot of time just to put in the last page of the deposition certifying that it's the court reporter's. That doesn't take any time at all. It's just one extra page that you have to put in. But it would have required an objection by you, a response by them. I mean, and if you're content with it, I mean, if that's what's going to end up. I mean, you would have spent extra hours. He would have spent extra hours. It's not a lot, but I can understand why you wouldn't object if you understand that these depositions are the real depositions. Again, Your Honor, all I can say is the question is that the court abused its discretion in abiding by the rule of law in this circuit. I would also like to touch upon some of the merits of the case. This Court can do a de novo review of the record. And even assuming that the evidence was admitted, there are a few issues that come up. The first one being the nonselection. The appellant wasn't selected for two positions. The evidence demonstrates that a selection panel of four individuals decided she was not qualified for the position because she didn't portray sufficient clinical qualities. That's very subjective. But the point is, where is the discrimination? Where is the evidence of discrimination based on her race for not selecting her? These four individuals, separate and apart individuals, all agreed somebody else was better qualified for the position. Well, before you even get there, there's the evidence that she wasn't notified about the position and that her application was lost a couple of times. Doesn't all of that go into the equation as well? There's no evidence that that is not true. There's no evidence. I don't understand what you're saying, that that is not true. There's no evidence that those applications, if in fact they were lost, were not lost. We have not established that. But her affidavit, declaration, whatever you want to call it, states exactly that. That she, that her application was somehow lost. And what I'm saying, Your Honor, is perhaps it was. And that is not, that does not rebut the presumption that four selecting officials decide she was not qualified because she didn't have the clinical qualifications. It kind of, a jury could conclude that she was being treated differently and that losing of the application was part of the process to weed her out of the competition. It could go to the pretext issue. I respectfully disagree, Your Honor, in any event. But on summary judgment, we're taking the evidence in the light most favorable to her. So whether you agree or disagree, we have to look at the evidence in the light most favorable to her statements. I understand. On the merits. But it is undisputed that the evidence, there's a declaration that was admitted by a Dr. Wong who was on the selection committee, and that evidence is undisputed that he and his selection committee did not, or chose, did not qualify her for the position. And I might add that. But then she could show that was a pretext. That doesn't end the inquiry. Even with that evidence, she has the opportunity to show that their reasoning was just a pretext for discrimination. That's true. But she first said, in order to meet her prima facie case, has to show she was qualified. Well, yeah, but the fact that she was interviewed shows she was qualified. Not necessarily. There are people that are qualified, and then there are people that are more qualified. That comes in the selection. That doesn't come in, she has to show she was qualified for the position and that someone else got the position. But the fact that she was less qualified goes to why she didn't get the position. Because if she weren't qualified, she wouldn't even have been considered at all. She would have been screened out earlier. I also wanted to touch upon, you mentioned the hostile work environment claim. The evidence was that on one occasion there was a mention of the fact that she was Nigerian, and that according to the appellant, that on a few occasions at least, there was a mention that she was the Queen of Sheba. The evidence establishes that neither the person who allegedly said it, nor the appellant, knew at the time that the Queen of Sheba was, in fact, an African female. But why would they use that term, of all terms? Well, certainly it shouldn't have been said. But the question is, what was the intent of it? And the person who said it said, I think the issue here is there's a failure to communicate amongst a number of different people. Fellow employees are not getting along. They're not communicating. And the thought was that the appellant felt above everybody, felt superior to other people, did not treat patients appropriately, and as a result, felt she was a queen amongst her peers. That was the intent. Nobody at the time it was said believed it had anything to do with race. But she didn't say Queen Elizabeth or Queen Mary or any other number of queens that one could think about. Yes. But in any case, these are merely offensive utterances. They weren't severe or pervasive. And as this Court said in the Manat case, that kind of comment is not sufficient to demonstrate hostile work. Well, but this kind of goes back to my question on the other side. What about the ROCs and all these other things? I mean, we're accustomed, just because this is the way the cases usually are presented, to hostile work environment. Usually it's not race, but sometimes it is. Usually it's gender, sex-based. And the hostile work environment almost always, the evidence is sex-related comments. So it's not only the harassment in the comment, but the bias based on gender is inherent in all of the comments. But I don't think it's a requirement for hostile work environment that each one of the things that make the work environment difficult themselves express the racial animus. So if she has enough evidence to suggest or establish, if believed by a jury, racial animus, I think all the other bad things that are happening in the workplace can be considered as part of hostile work environment. Do you agree with that? I'm not sure I do. I think it depends on the context. But one thing the court just pointed out was these ROCs. And I think it's important to note that there were a number of these ROCs that were submitted by patients. There's absolutely no evidence to suggest there's a conspiracy between or that there was any staff members encouraging patients to complain. Some of these patients wrote in on their own. You're kind of sliding off my point. You said you're not sure you agree. Maybe I don't want to press you any further than that. I'll just state my own view of the law is if it is something that is an expression of hostility, the expression itself does not have to contain within it some indication of racial animus. If you can establish racial animus by whatever mechanism, I think part of the hostile work environment is the other hostile acts that are occurring in that environment.  But I believe there are cases that suggest there has to be, in order to prove hostile work environment, a suggestion of a racial comment, a racial basis, and or a sexual basis. I think that's part of the patient case. I may just disagree with the lawyers. Okay. Fair enough. But as I was saying, these ROCs, it's important to note that there were several of them that were issued before she ever filed an EEO complaint. And to suggest that there were a conspiracy there to require patients to file these ROCs is just, it's not supported by the evidence. But don't you think it's just a little coincidental that the ROCs pretty much tracked her meetings with the EEOC representatives, and then there was a long lull between the ROCs. And then when she went for the second session, they picked up again. You don't see that as being coincidental. Clearly there were ROCs submitted after she filed an EEO complaint. That's correct. Pretty closely around the same time. They were close. And then there was a long lull. There were no, there was no EEO activity, no ROCs. And the EEO activity started again, and the ROCs started again. That's pretty coincidental, wouldn't you think? Well, I think it is just that, coincidental. And if it wasn't for those prior EEOC, prior ROCs that were filed by patients, both before and after, I mean, I don't think a reasonable jury can conclude that patients are complaining because of anything having to do with EEOC. Well, if someone is told to, you know, you should file an ROC, this is how, you know, if you want to complain about this person, you know, file an ROC. And they're not doing it for other pharmacists, because that's her complaint. Her complaint is that there were other pharmacists who were engaged in the same types of actions, interactions with patients as she, or worse, and that those people were not given ROCs. So, I mean, this is her charge that we have to accept in the light most favorable to her. That is her speculative charge, but there's no evidence whatsoever that supports the suggestion that anybody in staff encouraged patients to go forward. There is one affidavit from a co-worker who says that they, that there was some agreement, that she was told not to associate with the plaintiff and that they were out to get her, that the management was out to get her. So there is some evidence in the record. That's true, Your Honor. I don't know that that goes to the issue of why patients or is there any encouraging patients to come forward and complain about it. Based on that alone, the letter of reprimand was appropriate. There are a number of patients complaining about this, the appellant's rudeness or her misconduct towards patients. Yeah, okay. You're over time. If you'd like to have a paragraph or so to sum up. Well, I don't have anything else to add, Your Honor. I think the Court understands our position, I think. Okay. Thank you. Now, we took you over time, but if you'd like a minute. Thank you, Your Honor. I'll just make a few brief points. The first point is the Orr decision is specifically addressed in Las Vegas SANS, which distinguishes it and says Las Vegas SANS is the appropriate way that a district court has to act. On the second point, the Seventh and Sixth Circuit cases that he cited about the district court's discretion to exclude evidence, all of those involved highly unreliable evidence. Just distinguish it from here. And I would note one of them actually cites the McCormick Treatise that is the basis for our position. And I think maybe just the last point is, as I think you've noticed, there's my opposing counsel said at one point, you know, what was the intent, you know, of these statements that were being made? I mean, when I hear things like what was the intent, I think to myself, gee, this sounds like a jury question, not something that should be resolved on summary judgment. And our position is that there were a lot of jury questions here and should be resolved on summary judgment. Thank you, Your Honor. Thank you very much. The last case on the argument calendar, Uche Iwakukwe v. Nicholson now submitted for decision. And we're adjourned for the day. Thank you. This court for discussion stands adjourned.
judges: Goodwin, Fletcher, Rawlinson